JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON (Bar No. 162329)
*sgibson@jmbm.com*
GREGORY S. CORDREY (Bar No. 190144)
*gcordrey@jmbm.com*
JOSEPH J. MELLEMA (Bar No. 248118)
*jmellema@jmbm.com*
JESSICA P.G. NEWMAN (Bar No. 309170)
*jnewman@jmbm.com*
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone:   (949) 623-7200
Facsimile:   (949) 623-7202

Attorneys for Defendants WESTERN
DIGITAL CORPORATION and
WESTERN DIGITAL TECHNOLOGIES,
INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DATA SCAPE LIMITED,<br><br>              Plaintiff,<br><br>       v.<br><br>WESTERN DIGITAL<br>CORPORATION, WESTERN<br>DIGITAL TECHNOLOGIES, INC.,<br><br>              Defendants. | Case No. 8:18-cv-02285-DOC-KES<br><br>**WESTERN DIGITAL<br>CORPORATION AND WESTERN<br>DIGITAL TECHNOLOGIES, INC.'S<br>OPPOSITION TO MOTION TO<br>AMEND OR ALTER JUDGMENT<br>AND LEAVE TO AMEND**<br><br>DATE: July 8, 2019<br><br>TIME: 8:30 a.m.<br><br>Ctrm: 9D<br><br>The Hon. David O. Carter |

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL TECHNOLOGIES, INC. TO MOTION
TO ALTER AND FOR LEAVE TO AMEND

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.   INTRODUCTION ................................................................................. 1

II.  DATA SCAPE'S MOTION DOES NOT MEET THE
     REQUIREMENTS TO ALTER A JUDGMENT UNDER RULE 59
     OR RECONSIDERATION UNDER LOCAL RULE 7-18 ............................. 1

     A.   Data Scape Cannot Meet the Legal Standards ......................................... 1

          1.   Data Scape Reasonably Could Have Raised Its Proposed
               Amendments Earlier in the Litigation ............................................. 4

          2.   None of the Arguments or Evidence Data Scape Now
               Presents is New or was Previously Unavailable ............................ 4

          3.   There Is No Purported Manifest Error or Manifest
               Injustice Resulting From Denying Leave to Amend ................... 5

     B.   The Federal Circuit and District Court Routinely Deny Leave to
          Amend After Finding Patents Are Ineligible Under Section 101 ........... 6

     C.   Data Scape's Authority is Readily Distinguishable ................................. 7

III. VACATING THE COURT'S ORDER TO PERMIT LEAVE TO
     AMEND IS UNNECESSARY BECAUSE THE COURT PROVIDED
     WRITTEN FINDINGS SUPPORTING DISMISSAL WITH
     PREJUDICE ........................................................................................... 9

     A.   Claim 19 of the '929 Patent is Representative of the Asserted
          Claims ................................................................................................ 9

     B.   The Claims Are Directed to An Abstract Idea ..................................... 10

     C.   The Claims Are Not Directed to a Technical Advance ......................... 10

     D.   The Asserted Claims do not Include an Inventive Concept that
          Transforms the Abstract Idea into Patent-eligible Subject Matter ....... 11

IV.  EVEN IF DATA SCAPE'S MOTION TO VACATE THE COURT'S
     ORDER COULD MEET THE HIGH THRESHOLD UNDER RULE
     59(E) AND L.R. 7-18, LEAVE TO AMEND SHOULD NOT BE
     GRANTED ............................................................................................ 12

     A.   The Ultimate Question Whether a Claim Recites Patent-eligible
          Subject Matter Under Section 101 is a Question of Law .................... 12

     B.   Data Scape's Proposed Amendments Are Futile And Do Not
          Change the Court's Determination that the Patents are Directed
          to an Abstract Idea and Lack an Inventive Concept ............................ 13

Case No. 8:18-cv-02285-DOC-KES

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL TECHNOLOGIES, INC. TO MOTION
TO ALTER AND FOR LEAVE TO AMEND

1. Data Scape's References to the Intrinsic Record Are Irrelevant ................................................................................... 13

2. Data Scape's Inclusion of Technical References Discussing Synchronization Are Mere Argument and Should Be Ignored .......................................................... 14

3. Generalized Statements from Post-Priority Date References Are Irrelevant to Section 101 Analysis of *the Claims at Issue* ................................................................ 16

4. Data Scape's Claim Constructions are Untimely and Irrelevant .............................................................................. 17

    a. Data Scape Waived its Opportunity to Argue that Claim Construction was Necessary for the Court's Section 101 Analysis on the Pleadings ............................ 17

    b. The Court's Decision is In Line with Well-Reasoned Decisions in This and Other Courts ................ 17

    c. Data Scape's Tentative Claim Constructions Do Not Change This Court's Analysis Under Section 101 .......... 18

5. Data Scape's Remaining Categories of Allegations Are Not, In Fact, Allegations, But Mere Argument the Court Has Considered—and Rejected ................................... 23

C. The Court Should Deny Leave to Amend Due to Data Scape's Undue Delay, Bad Faith, Dilatory Motive and Prejudice to Defendants ...................................................................... 24

V. CONCLUSION ........................................................................ 25

JMBM | Jeffer Mangels Butler & Mitchell LLP

ii

Case No. 8:18-cv-02285-DOC-KES

65848091 NOTICE OF MOTION AND MOTION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL TECHNOLOGIES, INC. TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc., v. Green Shades Software*, *Inc.*,
   883 F.3d 1121 (Fed. Cir. 2018) ........................................................ 8, 22

*Abarca v. Merck & Co*.,
   2012 WL 137749 (C.D. Cal. Jan. 17, 2012)............................................ 2

*Albrecht v. Lund*,
   845 F. 2d 193 (9th Cir. 1988) ............................................................ 5, 8

*Allstate Ins. Co. v. Herron*,
   634 F.3d 1101 (9th Cir. 2011) ................................................................ 2

*Berkheimer v. HP, Inc.*,
   890 F.3d 1369 (Fed. Cir. 2018) ..................................................... 10, 23

*Blue Spike, LLC v. Google Inc*.,
   2015 WL 5260506 (N.D. Cal. Sept. 8, 2015)........................................ 7

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc*.,
   2018 WL 2558385 (C.D. Cal. Feb. 12, 2018) ...................................... 12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ................................................................ 6

*Content Aggregation Sols. LLC v. Blu Prod., Inc*.,
   2016 WL 6995490 (S.D. Cal. Nov. 29, 2016)........................................ 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ....................................................... 11-12

*Data Scape v. Citrix System, Inc.*,
   Case No. 18-cv-10658-RGK (C.D. Cal. Mar. 14, 2019)......................... 4

*Data Scape v. Pandora Media, Inc.*,
   Case No. 18-cv-10656-PSG (C.D. Cal. Mar. 4, 2019)............................ 4

*Data Scape v. Spotify USA Inc. and Spotify Technology S.A.*,
   Case No. 18-cv-10653-CBM (C.D. Cal. Mar. 4, 2019) .......................... 4

JMBM | Jeffer Mangels
Butler & Mitchell LLP

*Deutsch Hollandische Tabakgesellschaft mBH & Co., KG v. Trendsettah USA, Inc.*, No. 17-CV-0181-DOC,
2018 WL 4849707 (C.D. Cal. July 31, 2018) ............................................. 3

*Diaz v. Colvin*,
2015 WL 13763859 (C.D. Cal. Nov. 17, 2015) .......................................... 3

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ................................................................. 19

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012) ....................................................................... 6

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) ................................................................. 12

*Internet Patents Corp. v. General Auto. Ins. Servs.*,
29 F.Supp. 1264 (N.D. Cal. Sept. 24, 2013) ............................................... 7

*Joao Control & Monitoring Systems, LLC v. Acti Corporation Inc., et al.*,
Case No. SACV 10-1909 DOC (ANx) (C.D. Cal. July 26, 2012) ............. 3

*Kona Enterprises, Inc. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000) ....................................................................... 3

*Kraft v. Old Castle Precast Inc.*,
2016 WL 4120049 (C.D. Cal. Aug. 2, 2016) ............................................... 2

*La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) ..................................................................... 8

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006) ....................................................................... 7

*Lacey v. Maricopa*,
693 F.3d 896 (9th Cir. 2012) ....................................................................... 8

*Maxell, Ltd. v. Fandango Media, LLC*,
2018 WL 4502492 (C.D. Cal. Sept. 11, 2018) ........................................... 7

*Mayes v. Leipziger*,
729 F.2d 605 (9th Cir. 1984) ....................................................................... 8

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.*,
193 F. Supp. 3d 1069 (N.D. Cal. Jun. 9, 2016) ......................................... 7

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL
TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

JMBM | Jeffer Mangels Butler & Mitchell LLP

*Purepredictive, Inc. v. H20 AI, Inc*., 2017 WL 3721480 (N.D.
Cal. Aug. 29, 2017), *aff'd sub nom. Purepredictive, Inc. v.
H2O.ai, Inc*., 741 F. App'x 802 (Fed. Cir. 2018) ........................................ 7

*RingCentral, Inc. v. Dialpad, Inc.*,
372 F. Supp. 3d 988 (N.D. Cal.  Mar. 8, 2019) ........................................ 9

*Secured Mail Soln's v. Universal Wilde*,
873 F.3d 905 (Fed. Cir. 2017) ................................................ 15

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
226 F. Supp. 3d 1000 (N.D. Cal. 2016) ................................................ 15

*Talent Mobile Dev., Inc. v. Headios Grp.*,
No. 18-cv-0156-DOC, 2019 WL 468807 (C.D. Cal. Feb. 6, 2019) .......... 3

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ................................................ 18

*Turner v. Burlington Northern Santa Fe R. Co*.,
338 F.3d 1058 (9th Cir. 2003) ................................................ 2

*Two-way Media v. Comcast Cable Comm'ns,* LLC
874 F.3d 1333 (Fed. Cir. 2017) ........................................ 11, 18

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ................................................ 19

*Uniloc USA, Inc. v. Apple Inc.*,
2018 WL 2287675 (N.D. Cal. May 18, 2018) .................................... 7, 13

*Voip-Pal.com, Inc. v. Apple, Inc.*
18-cv-06216-LHK, (N.D. Cal. May 16, 2019) ........................................ 9

*Wood v. Ryan*,
759 F.3d 1117 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 21 (2014) ............. 2

**Other Authorities**

Fed. R. Civ. P. 59(e) .............................................................. *passim.*

Fed. R. Civ. P. 60(b) ................................................................ 7

Central District of California Local Rule 7-3 ........................................ *passim.*

Jeffer Mangels
Butler & Mitchell LLP

JMBM

JMBM | Jeffer Mangels Butler & Mitchell LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Western Digital Corporation and Western Digital Technologies, Inc. ("Western Digital") respectfully submit their opposition to Plaintiff Data Scape Limited's motion to alter or amend judgment and for leave to amend (Dkt. 48).

## I.    INTRODUCTION

Data Scape's motion to alter and vacate the Court's Judgment (Dkt. 41) and permit it leave to amend its complaint is baseless and should be denied.  Fatal to its motion, Data Scape could have reasonably amended its complaint to include the proposed amendments earlier in the litigation, but *intentionally* chose not to do so. Specifically, Data Scape never sought leave to amend prejudgment despite amending its complaints in response to nearly identical motions to dismiss the asserted patents in three related cases.  Nor did Data Scape argue for leave to amend in its opposition to Defendants' motion to dismiss.  Ninth Circuit law is clear that Rule 59(e) cannot be used to raise arguments or evidence that could have been raised earlier in litigation. The proposed amendments also are futile and would not cure the defect in the patent claims.  For example, it now proposes to add allegations purporting to construe certain terms.  Yet, Data Scape never argued that the claims must be construed in order to determine patent eligibility—not in its opposition nor at oral argument.  Even if considered, the proposed "tentative" constructions would not change the abstract character of the claims or that they lack an inventive concept.  The Court also set forth detailed findings that plainly show that the proposed amendments would be futile because they cannot change the fact that the claims are directed to the abstract idea of selectively transferring data from one device to another.  For these reasons, and those explained below, Data Scape's motion should be denied.

## II.   DATA SCAPE'S MOTION DOES NOT MEET THE REQUIREMENTS TO ALTER A JUDGMENT UNDER RULE 59 OR RECONSIDERATION UNDER LOCAL RULE 7-18

### A.    Data Scape Cannot Meet the Legal Standards

A court may alter or amend a final judgment pursuant to Federal Rule of Civil

1

Procedure 59(e).  District courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e).  *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal citations omitted).  However, a "***Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources***."  *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 21 (2014) (internal citation and quotation marks omitted) (emphasis added).  Furthermore, such motions may only be granted under certain circumstances: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (*en banc*) (*per curiam*)).  For evidence to classify as "newly discovered" it must "be discovered after the judgment" and "could not be discovered earlier through due diligence" and must be "of such a magnitude that had the court known of it earlier, the outcome would like have been different." *Abarca v. Merck & Co.*, 2012 WL 137749, at *2 (C.D. Cal. Jan. 17, 2012) (citing *Dixon v. Wallowa Cty.*, 336 F.3d 1013, 1022 n. 17 (9th Cir.2003)).  "Manifest error is not demonstrated by the disappointment of the losing party . . . Rather it is the 'wholesale disregard [of], misapplication [of], or failure to recognize controlling precedent.'" *Kraft v. Old Castle Precast Inc.,* 2016 WL 4120049 *5 (C.D. Cal. Aug. 2, 2016) (internal citations omitted).  None of these circumstances is present here.

Local Rule 7-18 sets forth the limited grounds upon which a motion for reconsideration can be brought, none of which apply here:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b)

1   the emergence of new material facts or a change of law occurring after
the time of such decision, or (c) a manifest showing of a failure to
2   consider material facts presented to the Court before such decision.
No motion for reconsideration shall in any manner repeat any oral or
3   written argument made in support of or in opposition to the original
motion.  [C.D. Cal. L.R. 7-18]
4

5   "The narrow circumstances specified in Local Rule 7-18 under which a party can

6   request reconsideration agrees with the applicable case law regarding Federal Rule of

7   Civil Procedure 59(e)."  *Joao Control & Monitoring Systems, LLC v. Acti*

8   *Corporation Inc., et al.*, Dkt. 377 at 2, Case No. SACV 10-1909 DOC (ANx) (C.D.

9   Cal. July 26, 2012).  "A motion for reconsideration under Rule 59(e) should not be

10  granted, absent *highly unusual circumstances*, unless the district court is presented

11  with newly discovered evidence, committed clear error, or if there is an intervening

12  change in the controlling law."  *Id.* (citations and internal quotations omitted)

13  (emphasis in original).  "Thus, when [as here] a party asserts neither the discovery of

14  new information nor an intervening change in controlling law, the only question

15  presented that a court can consider is whether the judge committed clear error in its

16  original ruling."  *Id.* (citing *McDowell*, 197 F.3d at 1255).  Here, the Court committed

17  no error, much less clear error.

18      Data Scape cannot meet the high standards required under Rule 59(e) or under

19  Local Rule 7-18.  In the Ninth Circuit, a "***Rule 59(e) motion may not be used to raise***

20  ***arguments or present evidence for the first time when they could reasonably have***

21  ***been raised earlier in the litigation***."  *Kona Enterprises, Inc. v. Estate of Bishop*, 229

22  F.3d 877, 890 (9th Cir. 2000) (emphasis added); *Talent Mobile Dev., Inc. v. Headios*

23  *Grp.*, No. 18-cv-0156-DOC, 2019 WL 468807, at *3–4 (C.D. Cal. Feb. 6, 2019); *Diaz*

24  *v. Colvin*, 2015 WL 13763859, at *1 (C.D. Cal. Nov. 17, 2015); *Deutsch Hollandische*

25  *Tabakgesellschaft mBH & Co., KG v. Trendsettah USA, Inc.*, No. 17-CV-0181-DOC,

26  2018 WL 4849707, at *3 (C.D. Cal. July 31, 2018).  Data Scape cannot show that any

27  arguments it now presents for leave to amend or its proposed amendments could <u>not</u>

28  have been reasonably raised earlier in the litigation.  In fact, it did raise them in three

JMBM | Jeffer Mangels
Butler & Mitchell LLP

related cases but chose not to raise them here.

### 1. Data Scape Reasonably Could Have Raised Its Proposed Amendments Earlier in the Litigation

Western Digital was not the first Defendant to file a motion to dismiss under § 101 on the Asserted Patents. In fact, the defendants in three other Data Scape cases pending in the Central District of California filed Rule 12(b)(6) motions to dismiss the same patents. *Data Scape v. Spotify USA Inc. and Spotify Technology S.A.,* Case No. 18-cv-10653-CBM, Dkt. 18 (C.D. Cal. Mar. 4, 2019) ("*Spotify*"); *Data Scape v. Pandora Media, Inc.,* Case No. 18-cv-10656-PSG, Dkt. 19 (C.D. Cal. Mar. 4, 2019) ("*Pandora*"); *Data Scape v. Citrix System, Inc.,* Case No. 18-cv-10658-RGK (C.D. Cal. Mar. 14, 2019) ("*Citrix*"), Dkt. 28. In each of these cases, Data Scape filed an amended complaint rather than respond to the motions. *Spotify*, Dkt. 19; *Pandora*, Dkt. 20; *Citrix*, Dkt. 30. Western Digital asked Data Scape whether it would be amending its complaint against Western Digital as it had done in the other three pending cases. Declaration of Joseph J. Mellema ("Mellema Decl."), ¶ 2. Data Scape responded that it would not amend its complaint and, in fact, did not do so. *Id*. Thus, Data Scape had the opportunity to amend and deliberately chose not to despite having done so in response to similar motions in three related cases.

Data Scape deliberately skipped another opportunity by not arguing for leave to amend in its opposition. *See* Dkt. 33. Data Scape easily could have raised the arguments it now presents, having done so against other defendants. For this reason alone, Data Scape's motion should be denied.

### 2. None of the Arguments or Evidence Data Scape Now Presents is New or was Previously Unavailable

There is nothing in Data Scape's proposed FAC that could not have been raised earlier, either in Data Scape's opposition to Western Digital's motion or in an amended complaint that Data Scape could have filed as a matter of right. Data Scape now proposes certain claim constructions, but there has been no intervening claim

JMBM | Jeffer Mangels Butler & Mitchell LLP

interpretation or change in the patent specification that would warrant leave to amend. Moreover, as Western Digital pointed out in its reply, Data Scape did not raise claim construction in its opposition. Dkt. 35 at 1. Nor did it do so at oral argument. Mellema Decl., Ex. A. Allegations regarding the background of the patents and recitation of certain claims now recited in the FAC also could have been raised earlier. And, in fact, the same or similar arguments were made previously. *Compare* Dkt. 33 [Data Scape Opposition] at 5 (describing Fig. 2 of Morohashi patents) *with* Dkt. 48 [Proposed FAC] at ¶ 14 (same). The same is true of its recitation of statements allegedly made by third parties. In short, because Data Scape's proffered arguments and evidence are not new and were readily available, they cannot now be raised under Rule 59(e) or Local Rule 7-18. Data Scape's remorse in not having brought these arguments forward in the instant case, as it did in others, does not justify granting the extraordinary remedy it now seeks. Accordingly its motion should be denied.

### 3. There Is No Purported Manifest Error or Manifest Injustice Resulting From Denying Leave to Amend

Data Scape does not contend that the Court applied the incorrect legal standard in determining patent eligibility under § 101, but only that the Court purportedly erred by not granting leave to amend or providing written findings why an amendment is futile. However, Data Scape's own authority makes clear that if a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment of the complaint would be futile. *See Albrecht v. Lund,* 845 F.2d 193, 195 (9th Cir. 1988) (citing *Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). If the district court determines that the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," then the dismissal without leave to amend is proper. *Id.* As explained below (*infra* Section IV.B), there is no manifest error nor is leave required to prevent manifest injustice because even if leave were granted it would be futile.

There also is no manifest error because Data Scape never sought leave to amend despite the undisputed ability to do so having done it ***three times*** in response to similar motions to dismiss in related cases. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 944 (7th Cir. 2012) (courts act within their discretion to dismiss with prejudice where party does not make request for leave to amend). Data Scape's argument that the Court did not explain why the amendment is futile is a red herring. There were no proposed amendments to consider because Data Scape never sought leave prejudgment. Mot. at 5. Nonetheless, the Court's Judgment sets forth numerous written findings that make clear that the defects in the patent cannot be cured by amendment and thus supports the Court's dismissal with prejudice. *See Content Aggregation Sols. LLC v. Blu Prod., Inc.,* 2016 WL 6995490, at *7 (S.D. Cal. Nov. 29, 2016) ("Leave to amend would be futile because the flaw lies in Plaintiff's patent as a matter of law rather than its pleading."); *see infra* Section III.A-D (setting forth specific findings supporting that (1) claim 19 of the '929 patent is representative of the claims of the *Morohashi* Patents and the *Hirano* Patent; (2) the claims are directed to an abstract idea; (3) the claims are not directed to a technical advance; and (4) the claims do not contain an inventive concept that would transform the asserted claims into patent-eligible subject matter). In light of the Court's detailed analysis of the claims at issue, it correctly determined that "for these reasons" the Court dismissal should be with prejudice. Dkt. 41 at 12.

**B.    The Federal Circuit and District Court Routinely Deny Leave to Amend After Finding Patents Are Ineligible Under Section 101**

Contrary to Data Scape's repeated assertion, it is not legal error to deny leave—and indeed courts routinely deny leave. On numerous occasions, the Federal Circuit and district courts have denied leave to amend after determining that the asserted patents constitute ineligible subject matter based on futility. *See, e.g., ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 776-77 (Fed. Cir. 2019) (affirming dismissal with prejudice after finding the asserted patents ineligible under § 101;

6    Case No. 8:18-cv-02285-DOC-KES

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL
TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

JMBM | Jeffer Mangels
Butler & Mitchell LLP

*Purepredictive, Inc. v. H20 AI, Inc*., 2017 WL 3721480, at *7 (N.D. Cal. Aug. 29, 2017) (leave to amend futile "in light of the above analysis" finding patent ineligible under § 101), *aff'd sub nom. Purepredictive, Inc. v. H2O.ai, Inc*., 741 F. App'x 802 (Fed. Cir. 2018) (affirming motion to dismiss and denial of leave to amend based on futility); *Maxell, Ltd. v. Fandango Media, LLC*, 2018 WL 4502492, at *9 (C.D. Cal. Sept. 11, 2018) ("The Court GRANTS Fandango's Motion for Judgment on the Pleadings that the asserted claims . . . are invalid for failure to satisfy [] § 101. Since this is a legal issue and amendment would be futile, leave to amend would be denied."); *Uniloc USA, Inc. v. Apple Inc.,* 2018 WL 2287675, at *8 (N.D. Cal. May 18, 2018) (rejecting leave to amend "to expand on 'details in the patent that support Uniloc's view that the claims as a whole are not routine and conventional'"); *Papst Licensing GmbH & Co. KG v. Xilinx Inc.,* 193 F. Supp. 3d 1069, 1095 (N.D. Cal. Jun. 9, 2016) ("Because the asserted claims are directed to patent-ineligible subject matter, a defect which cannot be cured through amendment of a complaint, Plaintiff's claims for infringement are DISMISSED WITH PREJUDICE") (caps in original); *Internet Patents Corp. v. General Auto. Ins. Servs.,* 29 F.Supp. 1264, 1270 (N.D. Cal. Sept. 24, 2013) (finding patents invalid under § 101 and granting motion to dismiss with prejudice); *Blue Spike, LLC v. Google Inc*., 2015 WL 5260506, at *11 (N.D. Cal. Sept. 8, 2015) (denying leave to amend as futile in light of ruling that the claims are invalid under § 101).

## C.    Data Scape's Authority is Readily Distinguishable

Data Scape relies heavily—and incorrectly—on the standard for leave to amend under Rule 15(a)(2).  However, "the district court may not grant [a motion to amend] unless the judgment is vacated pursuant to Rule 59(e) or Fed. R. Civ. P. 60(b)."  *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (*en banc*).  Accordingly, because Data Scape cannot meet the requirements under Rule 59(e) or Local Rule 7-18, its reliance on the Ninth Circuit's standard for amending is inapposite.  *See* Mot. at 2. Data Scape passed on its chance to seek leave under this lighter standard multiple

1  times when it did not amend initially, in response to Western Digital's motion to

2  dismiss, or in opposition to Western Digital's motion to dismiss.

3       Data Scape's more relevant authority does not help it, and in fact, supports that

4  the Court did not commit any manifest error requiring that its judgment be vacated.

5  As with Data Scape's proposed amendment discussed below (*infra* Section IV.B), the

6  Ninth Circuit held in *Albrecht* held that because the proposed amendments could not

7  cure the defect in the complaint, there was no error in the district court's order

8  denying leave to amend.  845 F.2d at 195-96; *see also La Raza v. Cegavske,* 800 F.3d

9  1032, 1041 (9th Cir. 2015) (showing that amendment would be futile supports denial

10 of leave to amend); *Lacey v. Maricopa,* 693 F.3d 896, 927 (9th Cir. 2012) (same).

11 *Lacey* does note that leave should be granted even if there was not a previous request,

12 as Data Scape quotes, but continues ". . . unless it determines that the pleading could

13 not possible be cured by the allegation of other facts."  *Id.*  This is squarely in line

14 with the case at bar, this Court having determined that the allegation of other facts

15 cannot cure Data Scape's deficient complaint.

16      In *Aatrix Software, Inc. v. Green Shades Software, Inc.,* the Federal Circuit

17 explained that "[t]he district court gave no reason for its denial of Aatrix's motion to

18 amend, and this is not a case where the record contains 'ample and obvious grounds

19 for denying leave to amend.'"  883 F.3d 1121, 1126 (Fed. Cir. 2018).  And, unlike

20 Data Scape, the plaintiff there presented "specific allegations directed to

21 'improvements and problems solved by the Aatrix patented inventions.'"  *Id*. at 1127.

22 In *Mayes v. Leipziger,* the Ninth Circuit again held that it appeared from the record

23 that the plaintiff could correct the defect in its complaint and the Ninth Circuit found

24 that "[t]he record here does not clearly dictate denial of leave to amend nor has the

25 district court supplied written findings."  729 F.2d 605, 608-09 (9th Cir. 1984).  In

26 contrast to *Aatrix* and *Mayes,* here the Court supplied detailed written findings

27 supporting the conclusion that the asserted claims were patent ineligible and that the

28 complaint should be dismissed with prejudice.

Finally, Data Scape's reliance on *Voip-Pal.com, Inc. v. Apple, Inc.* is misplaced. 18-cv-06216-LHK, Dkt. 80 at 3 (N.D. Cal. May 16, 2019).  There, the Court believed it may be reversible error to deny amendments only "because the Court has not yet ruled on the joint consolidated motions to dismiss." *Id.*  Here, Data Scape *intentionally* never sought a motion for leave to amend until *after* the Court ruled on Defendants' motion to dismiss.  Also, the court in *Voip-Pal* was not facing whether dismissing a motion with prejudice constituted manifest error under Rule 59(e) sufficient to require vacating the order to allow leave to amend.[1]

## III. <u>VACATING THE COURT'S JUDGMENT TO PERMIT LEAVE TO AMEND IS UNNECESSARY BECAUSE THE COURT PROVIDED WRITTEN FINDINGS SUPPORTING DISMISSAL WITH PREJUDICE</u>

The Court meticulously analyzed the patentability of the asserted claims and correctly held that under the applicable legal standards, the asserted claims are directed to an abstract idea and lack an inventive concept.  Nothing in Data Scape's proposed FAC alters these findings. The following excerpts below highlight the Court's written findings.

### A.   <u>Claim 19 of the '929 Patent is Representative of the Asserted Claims</u>

The Court addressed the issue of the use of a representative claim and explained the basis for its holding that Claim 19 of the '929 Patent is representative of the Asserted claims of the Morohashi Patents and Hirano Patent.  *See* Judgment at 7 ("claim 19 of the 919 [sic] Patent recites the abstract idea of transferring selected data from one storage device to another storage location, encapsulating this abstract idea as it runs through the Asserted Patents. Compare Compl. Ex. B, claim 19, with Compl. Ex. B, claim 1 (identifying the patented device as selecting data to be transferred from one apparatus to another and controlling such transfer of selected data); *see also id.* ("Plaintiff does not point to any claim within the 893 Patent that is distinct from the

---

[1] Although the Court in *RingCentral, Inc. v. Dialpad, Inc.* granted leave to amend, it gave no explanation and stated that "the Court doubts whether the identified [§ 101] deficiencies can be cured by amendment." 372 F. Supp. 3d 988, 1005 (N.D. Cal. Mar. 8, 2019).

JMBM | Jeffer Mangels Butler & Mitchell LLP

representative claim, which is generally required to make a "meaningful argument" against the representative claim. Further, in contrast to the plaintiff in *Berkheimer*, who made arguments "regarding limitations found only in the dependent claims," 881 F.3d at 1365-66, Plaintiff does not specifically identify limitations found only in the other claims. Mot. at 21–23; Reply at 9.").

## B.   The Claims Are Directed to An Abstract Idea

The Court also explained the basis for finding that the Asserted Patents are directed to an abstract idea.  Judgment at 8 ("As claim 19 of the 929 Patent demonstrates, the focus of the Asserted Patents is to "select certain data" to be transferred from one apparatus to another, detect whether the two apparatuses are connected, compare the information stored on the two devices, and transfer selected data from one apparatus to another apparatus. Compl. Ex. B., 929 Patent claim 19 (31:19)").  The Court further explained that this "method of recognizing certain data, extracting the data, and transferring the stored data, [is] much akin to the data selection, transfer, and storage functions of several patents invalidated by the Federal Circuit." *Id*. (citing *Content Extraction*, 776 F.3d at 1345 (holding invalid patents that recited a method of extracting data, recognizing specific information, and storing that information) and *SAP American*, 898 F.3d at 1167 (invalidating claims where the focus of the claims was selecting certain information)).

## C.   The Claims Are Not Directed to a Technical Advance

The Court rejected Data Scape's attempt to characterize the patents as being directed to a data synchronization system. Judgment at 9 ("synchronization is never mentioned anywhere in the 581 Patent, 929 Patent, or 537 Patent, and synchronization is not mentioned in the claims of the 893 Patent. *See* Compl. Ex. A, B, C, D.").  The Court also rejected the use of a controller as constituting an advance.  *Id*. ("the controller's function is to compare data and control the transfer of selected data. See Compl. Ex. B (929 Patent, claim 1. As articulated in numerous cases, a patent is abstract where the claims focus on the idea of '1) collecting data, 2) recognizing

JMBM | Jeffer Mangels
Butler & Mitchell LLP

certain data within the collected data set, and 3) storing that recognized data in a memory. The concept of data collection, recognition, and storage is undisputedly well-known.'"(citing *Content Extraction*, 776 F.3d at 1167)).  In short, the Court concluded that "[i]nstead of being aimed at specific improvements, looking to claim 19 of the 929 Patent as well as the claims of the Asserted Patents as a whole, the patents articulate an abstract concept of a communication system configured to extract selected data and "transfer content data to a first apparatus form a second apparatus." Judgment at 9 (citing language from the claims of each patent).

### D.   The Asserted Claims do not Include an Inventive Concept that Transforms the Abstract Idea into Patent-eligible Subject Matter

Finally, the Court set forth its rationale that the claims lack an inventive concept.  For example, it held that claim 19 of the '929 Patent uses only "generic functional language" to select, compare, and transfer data, and thus does not put forth an inventive language.  Judgment at 11 (citing *Two-Way Media*, 874 F.3d at 1339).  It also held that "there is no apparent unconventional means in claim 19; the steps consist of editing data, detecting data, comparing data between two devices, and then transmitting certain data." *Id*.  This ordered combination "of detecting, comparing, and transferring likewise does not transform the Asserted Patents into an inventive concept, as these are conventional steps, in order, by which to selectively transfer data." *Id*. at 11 (citing *Two-Way Media*, 874. F.3d at 1341 ("the claim uses a conventional ordering of steps . . . with conventional technology to achieve its desired result")).  The Court similarly concluded that the other patents fared no better. *Id*. at 12.

In short, contrary to Data Scape's assertions, the Court's Judgment clearly sets forth the defects in the claims supporting its determination that dismissal with prejudice was appropriate.  Data Scape concedes that it is proper to deny leave to amend where the proposed amendments would be futile.  Mot. at 4.  Accordingly, there is no basis to vacate the Court's Judgment.

**IV.    EVEN IF DATA SCAPE'S MOTION TO VACATE THE COURT'S JUDGMENT COULD MEET THE HIGH THRESHOLD UNDER RULE 59(E) AND L.R. 7-18, LEAVE TO AMEND SHOULD NOT BE GRANTED**

**A.    The Ultimate Question of Whether a Claim Recites Patent-eligible Subject Matter Under Section 101 is a Question of Law**

Data Scape's attempt to create factual disputes in its proposed FAC, should be rejected.  It is well settled that the ultimate question whether a claim recites patent-eligible subject matter under § 101 is a question of law.  *Intellectual Ventures I LLC v. Capital One Fin. Corp*., 850 F.3d 1332, 1338 (Fed. Cir. 2017) ("Patent eligibility under § 101 is an issue of law[.]").  Where the court has a "full understanding of the basic character of the claimed subject matter," the question of patent eligibility may properly be resolved on the pleadings.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).  "Patent eligibility under § 101 is a question of law that may, in appropriate cases, be decided on the pleadings without the benefit of a claims construction hearing." *Modern Telecom Sys. LLC v. Juno Online Servs*., SACV 14-0348-DOC, 2015 U.S. Dist. LEXIS 33835, at *6 (C.D. Cal. Mar. 17, 2015); *Content Extraction*, 776 F.3d at 1349 (affirming district court's decision to grant motion to dismiss based on patent ineligible subject matter under § 101 without having a claims construction hearing).  Before raising claim construction in its motion to alter and vacate the Court's Judgment, Data Scape never argued that claim construction was necessary.  Aside from its dissatisfaction with the Court's ruling, nothing has changed.  *See Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc*., 2018 WL 2558385, at *8 (C.D. Cal. Feb. 12, 2018) (claims require construction before ruling on §101 motion "only where claim construction disputes are relevant to the § 101 question.").  Even taking its proposed constructions at face value, as well as the citations to the specifications and third party statements, as a matter of law such allegations do not change the abstract character of the claims nor do they change the fact that the claims recite only conventional computer functions and components.  As explained above, the claims remain

1   impermissibly directed to an abstract idea and lack any inventive concept regardless of

2   the additional allegations in Plaintiff's proposed FAC.

**B.   Data Scape's Proposed Amendments Are Futile And Do Not Change the Court's Determination that the Patents are Directed to an Abstract Idea and Lack an Inventive Concept**

**1.   Data Scape's References to the Intrinsic Record Are Irrelevant**

6   Data Scape argues that quoting portions of claim elements and the patent

7   specifications are amendments to its complaint that overcome a showing of futility.

8   Data Scape, incredibly, states that these portions "were not possible to include in the

9   single motion-to-dismiss opposition" as an excuse.  Mot. at 6.  Data Scape's argument

10   is that it simply ran out of room.[2]  But as discussed above, that is not the standard on a

11   motion for reconsideration, and in any event, the patents-at-issue, including the claims

12   and specification, are part of the original complaint since they were attached as

13   exhibits to the complaint.  *See* Dkt. 1.

14   Even more fundamentally, however, amendments that appear on the face of a

15   patent at issue cannot cure § 101 defects.  *See Uniloc USA*, 2018 WL 2287675, at *8

16   (Uniloc's proposed amendments appear on the face of the patent at issue and fail to

17   cure the defects under *Alice*); *see supra* Section II.B (Section 101 determinations are a

18   matter of law).  Thus, any amendments that Data Scape has included in its proposed

19   FAC would be irrelevant to the Court's determination under § 101, and should be

20   disregarded for purposes of futility analysis.  Not only would those amendments be

21   irrelevant, but they are also conclusory.

22   Having told the Court that Data Scape ***could not*** have included these portions in

23   its opposition brief, because it did not have enough pages, Data Scape then re-

24   characterizes the *Morohashi* and *Hirano* patents.  Mot. at 6.  Apparently unsatisfied

---

[2] Lest there be any doubt, Data Scape had several options, even if that were the case. It could have asked for additional pages or time to brief the issue; it could have chosen to argue more sparingly other arguments in order to ensure that it ample room for the sake of including arguments.  It did none of the above.

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL
TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

with its prior attempts to characterize the patents-at-issue in its opposition brief,[3] Data Scape hopes to convince the Court to consider these re-considerations, based on the same claim language and the same specification available before.  This Court should not countenance Data Scape's attempted end-run around its decision.

Taking Data Scape's re-characterizations at face value, they do not show that the patents-at-issue claim anything more than an abstract idea.  Fundamentally, the patents-at-issue still relate to selectively transferring data from one data storage to another.  Data Scape's re-characterizations do not reveal any specific methodology in which the data transfer is conducted, much less any advance that would constitute an inventive concept.  The re-characterizations still reference "selectively transmit," "between first and second storage media," "selectively delete and transfer certain digital content across the two apparatuses," "selectively transfer certain digital content data," and "automatically transfer that data to the second storage medium . . . ." *See* Mot. at 6-7.  These re-characterizations do nothing to overcome the Court's § 101 Judgment.

For these reasons, the Court should ignore Data Scape's attempts to re-characterize the patents-at-issue.  The Court soundly analyzed Data Scape's patents-at-issue, its characterizations of the claimed inventions, and concluded—rightly—that the claims were directed to an abstract idea and did not include any inventive concept that would avoid a finding of unpatentability.

### 2.   <u>Data Scape's Inclusion of Technical References Discussing Synchronization Are Mere Argument and Should Be Ignored</u>

Data Scape claims that technical references in its proposed amended complaint show that the patents-at-issue are directed to synchronization.  But the portions of the FAC that Data Scape cites are not amendments; rather, they already appeared in the

---

[3] As the Court saw from Data Scape's opposition to motion to dismiss, Data Scape characterized the claims multiple times and still ended up mostly agreeing with Western Digital's characterization of the claims.  *See* Dkt. 35 at 2-3.

14

Case No. 8:18-cv-02285-DOC-KES
OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

JMBM | Jeffer Mangels
Butler & Mitchell LLP

original complaint.  Ostensibly, Data Scape was unsatisfied with its opposition and oral argument to rebut Western Digital's showing that the word "synchronization" does not appear in the claims of any of the patents-at-issue, and wanted a re-do.

Data Scape also wrongly characterizes the interplay of the technical references with the Court's Judgment as a "contradiction."  Mot. at 7.  The Court's Judgment stated: "Plaintiff characterizes the Morohashi Patents as involving a data synchronization system, Opp'n at 3, but synchronization is never mentioned anywhere in the 581 Patent, 929 Patent, or 537 Patent, and synchronization is not mentioned in the claims of the 893 Patent. *See* Compl. Ex. A, B, C, D."  Dkt. 41 at 9.  But there is no contradiction between what the Court found and the technical references.  Data Scape based its argument on technical references outside of the patents-at-issue, not cited in the patents-at-issue, and whose descriptions do not appear in the patents-at-issue.  The Court need not give *any* weight to extrinsic evidence beyond the four corners of the complaint or the patents-at-issue at the pleadings stage, particularly when they are not new facts, new law, or constitute a manifest error.  *See Secured Mail Soln's v. Universal Wilde,* 873 F.3d 905, 913 (Fed. Cir. 2017) ("[T]his court has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'").

This is an argument that Data Scape could have brought—and in fact, did raise—in its opposition.  For example, Data Scape cites *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 226 F. Supp. 3d 1000, 1007-08 (N.D. Cal. 2016) in support, a case it cited—and argued—in its opposition brief.  *See* Dkt. 33 at 11.  There, Data Scape quoted the exact portion of the decision that it quotes here.

The technical references cited in Data Scape's proposed amendments are nothing more than a hook to re-argue the *Synchronoss* case in a way Data Scape wished it would have in its opposition.  Again, this Court should not countenance an end-run around its decision.

3.     **Generalized Statements from Post-Priority Date References Are Irrelevant to Section 101 Analysis of *the Claims at Issue***

Data Scape cites references from 2004-2006—after the priority date of the patents-at-issue—for the proposition that there was a need for a solution (undisclosed) to a "computer-specific problem" (also undisclosed).  Mot. at 7-8.  As a threshold issue, Data Scape appears to have simply drafted argument for its motion and inserted it whole-cloth into its FAC.  *Compare* Mot. at 8-9 *with* Exh. 1, ¶¶ 67-70.  These are neither new facts or law, nor a showing of manifest error.  *See supra* Section II.A.

Moreover, Data Scape appears to have cited portions of its original complaint as though they constituted new facts, though they do not appear to be proposed amendments.  *See, e.g.*, Mot. at 8:1-2 ("FAC at ¶¶ 14-30, 49-70, 90-110, 129-145").  To the extent Data Scape is relying on portions of its complaint as originally filed, the Court should ignore any such content or argument based thereon.

Each reference itself appears to generally state that improvements could be made to a general technical field.  But that in and of itself does not translate to a finding that the *claims of the patents-at-issue* actually recite any improvements.  Not only do the references cited by Data Scape not specifically identify what these future improvements may be, they do not state that the ***claims of the patents-at-issue*** constitute those future improvements.  And how could they?  They all have dates *after* the priority date of the patents-at-issue.

It is disconcerting that Data Scape amended its complaint to include reference to U.S. Patent No. 7,546,353, and claimed that the '353 patent "cited Data Scape's patent, which it acknowledged was in the same technical field."  Mot. at 8.  Nowhere does it appear that any of the patents-at-issue were cited on the face of the '353 patent patent, nor do the words "technical field" appear anywhere within the '353 patent—or any acknowledgement that any of the patents-at-issue were identified.

Finally, these references do not change any of the conclusions made by this Court in its § 101 Judgment.

### 4. Data Scape's Claim Constructions are Untimely and Irrelevant

Data Scape, for the first time in a motion for reconsideration, proffers eleven different claim constructions that it now argues salvages the validity of the patents-at-issue. Data Scape, however, has waived its ability to argue that claim construction is necessary, or that it would change the Court's § 101 Judgment.

#### a. Data Scape Waived its Opportunity to Argue that Claim Construction was Necessary for the Court's Section 101 Analysis on the Pleadings

Data Scape had an opportunity in its opposition brief to argue that claim construction was necessary to determine the validity of the patents-at-issue under § 101. Western Digital first raised this issue in its motion to dismiss when quoting several cases—including in this circuit—for the proposition that the Court could determine § 101 patent eligibility on the pleadings *without claim construction*. *See* Dkt. 31 at 9-10. Data Scape chose not to raise claim construction in its opposition brief. *See generally* Dkt. 33. Western Digital specifically referenced this fact in its reply, stating "neither party has argued that claim construction is necessary, nor has Data Scape pointed to any factual dispute preventing a decision on the pleadings." Dkt. 35 at 1. In oral argument, Data Scape never referenced any need for claim construction to this Court. *See generally* Mellema Decl., Exh. A. Data Scape has therefore waived its ability to bring claim constructions to the Court's attention after having failed to diligently raise them before. For this reason alone, the Court should disregard any proposed tentative claim constructions in Data Scape's complaint.

#### b. The Court's Decision is In Line with Well-Reasoned Decisions in This and Other Courts

Courts have made it abundantly clear that claim construction is not necessary to determine patent eligibility under § 101, in any event. *See* Dkt. 31 at 9-10 (collecting cases showing no claim construction necessary). *See also supra* Section IV.A. The Court's reasoning would equally apply whether or not Data Scape's belated claim constructions are considered—or not—as shown in detail below.

17   Case No. 8:18-cv-02285-DOC-KES

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL
TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

c. **Data Scape's Tentative[4] Claim Constructions Do Not Change This Court's Analysis Under Section 101**

None of Data Scape's claim constructions disrupt the Court's § 101 Judgment. For example, Data Scape defines "controller" as "a sub-class of computer microprocessors designed to enable the transfer of digital data."  Mot. at 10.  So what?  Data Scape does not provide any explanation for how this definition, even if accurate, would change the Court's analysis.  As several courts have pointed out—and as Western Digital pointed out in its motion to dismiss briefing—the controller as claimed in the '929 patent is generic and described in terms of its function: "configured to compare . . . management information [on one apparatus] with management information of data stored [on the other apparatus] and to transmit data . . . based on result of the comparison."  '929 patent at 29:22-26.  Simply put, the controller of the patents-at-issue "compares" two sets of data, just as a controller does in generic applications.  *See generally* Dkt. 35 at 16-18; s*ee, e.g.*, *Two-way Media v. Comcast Cable Comm'ns, LLC*, 874 F.3d 1333, 1338-39 (Fed. Cir. 2017) (finding as conventional computer functions of processing data, routing it, controlling it, and monitoring its reception); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("We agree with the district court that the claims' recitation of a . . . 'control unit' fail[s] to add an inventive concept sufficient to bring the abstract idea into the realm of patentability.").  And as the Court recognized, "as Plaintiff recites, the controller's function is to compare data and control the transfer of selected data.  *See* Compl. Ex. B (929 Patent, claim 1)."  Dkt. 41 at 9.

As another example, Data Scape defines "management information" to mean "digital data stored in a program file and configured to enable a controller to electronically locate, extract and/or transfer only select content data without

---

[4] It does not make any sense that Data Scape is proffering "tentative" claim constructions which the Court must consider as true during the pleadings stage. Factual allegations that are subject to change cannot operate in such a fashion.

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL
TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

transferring all content data." Mot. at 10. Setting aside that none of this language is borne out by the claims or specification, and that Data Scape has provided no showing to the contrary, Data Scape's definition itself reveals the same glaring problem that Western Digital briefed during its motion to dismiss, and which the Court concluded as well. Namely, Data Scape's definition of enabling a controller to perform certain functions such as locating, extracting, and/or transferring certain data does nothing more than simply recite what a conventional controller already does.

The rest of Data Scape's constructions are equally flawed, as illustrated in the following table.

| Tentative Construction | Reasons Why Construction Irrelevant |
|---|---|
| "content data" defined to mean "digital data useable to communicate the content or substance of a digital file, as opposed to its metadata" | Data Scape provided no reasoning why the proposed tentative construction would change the § 101 Judgment. Not recited in claim language. Defined term generic, conventional, and functionally defined. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716-17 (Fed. Cir. 2014) ("Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change this analysis."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("[M]erely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas"). |
| "compare/comparing/com | *See* prior argument regarding "controller" which was |

JMBM | Jeffer Mangels
Butler & Mitchell LLP

| | |
|---|---|
| parison" defined to mean "performing an electronic analysis of two sets of digital data stored in different apparatuses to determine the differences between them, if any" | functionally defined to conduct a generic comparison. |
| "without regard to the connection" defined to mean "regardless of whether or not the identified apparatuses are currently connected" | Data Scape provided no reasoning why the proposed tentative construction would change the § 101 Judgment. Not recited in claim language. Argument related to this term was already proffered to the Court in Data Scape's opposition brief and rejected. *See* Dkt. 33 at 14-15. The definition does nothing to disturb the Court's Judgment. |
| "connected/connected" defined to mean "electrically communicating via a wired or wireless connection" | Data Scape provided no reasoning why the proposed tentative construction would change the § 101 Judgment. Not recited in claim language. Argument related to this term was already proffered to the Court in Data Scape's opposition brief and rejected. *See* Dkt. 33 at 15. The definition does nothing to disturb the Court's Judgment. |
| "uniquely associate" defined to mean "provide a one-to-one correlation using programmable code" | Data Scape provided no reasoning why the proposed tentative construction would change the § 101 Judgment. Not recited in claim language. Argument related to this term was already proffered to the Court in Data Scape's opposition brief and rejected. *See* Dkt. 33 at 3, 22. The definition does nothing to disturb the |

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL
TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

| | Court's Judgment. |
|---|---|
| "detector" defined to mean "an input and/or output computer interface designed to receive a predetermined digital signal indicating whether one apparatus is externally connected to any other apparatus" | Data Scape provided no reasoning why the proposed tentative construction would change the § 101 Judgment.  Not recited in claim language.  Argument related to this term was already proffered to the Court in Data Scape's opposition brief and rejected.  *See* Dkt. 33 at 14-15.  This term is related to the "without regard to the connection" term above, and for the same reasons, does nothing more than recite generic, conventional components and functions.  The definition does nothing to disturb the Court's Judgment. |
| "editor" defined to mean "a sub-class of computer interface hardware and/or micro controllers designed to enable editing of digital data" | Data Scape provided no reasoning why the proposed tentative construction would change the § 101 Judgment.  Not recited in claim language.  This term is related to the "management information" term above, in regard to "editing" management information, and for the same reasons, does nothing more than recite generic, conventional components and functions.  Argument related to this term was already proffered to the Court in Data Scape's opposition brief and rejected. *See* Dkt. 33 at 5-6, 14-15, 21-22.  The definition does nothing to disturb the Court's Judgment. |
| "storage medium" defined to mean  "an identifiable non-volatile computer memory for electronically storing | Data Scape provided no reasoning why the proposed tentative construction would change the § 101 Judgment.  Not recited in claim language.  Defined term generic, conventional, and functionally defined.  Argument related to this term was already proffered to |

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL
TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

| data" | the Court in Data Scape's opposition brief and rejected. *See* Dkt. 33 at 5-6, 8-10.  The definition does nothing to disturb the Court's Judgment. |
|---|---|
| "list" defined to mean "a digital table, which is stored in a predetermined area in a storage medium and includes an identifier for each stored content data file" | Data Scape provided no reasoning why the proposed tentative construction would change the § 101 Judgment.  Not recited in claim language.  This term is related to the "uniquely associate" term above in regard to associating the list with an external apparatus, and for the same reasons, does nothing more than recite generic, conventional components and functions. Argument related to this term was already proffered to the Court in Data Scape's opposition brief and rejected. *See* Dkt. 33 at 3.  The definition does nothing to disturb the Court's Judgment. |

Data Scape cites *Aatrix* for the proposition that Data Scape is *entitled* to a second bite at the apple, and that *Aatrix* compels claim construction.  *See* Mot. at 11, 14.  *Aatrix* makes no such requirement, explicitly stating that "patent eligibility can be determined at the Rule 12(b)(6) stage.  *Aatrix,* 882 F.3d at 1125 (citations omitted). The *Aatrix* court explains that "if there are claim construction disputes"—none were present here—then the court must adopt "the non-moving party's constructions"— none were present here—or "resolve the disputes to whatever extent is needed . . . which may well be less than a full, formal claim construction."  *Id.* (citations omitted). The Court thoroughly evaluated the arguments before it, including an analysis of the claims, the specifications, and the parties' own characterizations thereof, meeting its obligations as described in *Aatrix*.

Moreover, for the reasons stated above, Data Scape has already waived its arguments regarding claim construction, and its purported tentative claim

1   constructions are found wanting.

2   **5.**   **Data Scape's Remaining Categories of Allegations Are Not, In Fact, Allegations, But Mere Argument the Court Has Considered—and Rejected**

3

4   Data Scape's purported fifth and seventh categories of allegations are not

5   factual allegations.  Rather, they are only legal conclusions or argument to allow Data

6   Scape to make arguments that they already made.  As stated above, this is improper on

7   a motion for reconsideration.  *See supra* Section II.A.

8   Data Scape, once again, is arguing that the claims of the patents-at-issue are

9   "not conventional, routine, or generic."  *See* Dkt. 33 at 21-22.  Data Scape has already

10   proffered these arguments to the Court in its motion to dismiss opposition brief.  *See*

11   *id.* ("And here, the patents and their file histories make clear that each included

12   independent-claim limitations that were not in the prior art, let alone 'well-understood,

13   routine, and conventional.'"); *see id.* ("That is because the 'mere fact that something is

14   disclosed in [] prior art … ***does not mean*** it was well-understood, routine, and

15   conventional.'" (quoting *Berkheimer*, 890 F.3d at 1372-73, emphasis in original)).

16   Data Scape gives the impression that it has proffered additional evidence to the

17   Court that *requires* the Court to give it leave to amend.  Notably, however, the

18   "additional evidence" referred to by Data Scape in category five (Mot. at 11-12) is the

19   USPTO and third-party technologists, in addition to already cited portions of the

20   intrinsic record.  *See id.* at 21.  But even if that "additional evidence" is relevant—

21   which it is not—it could have been brought during the motion to dismiss briefing.

22   Indeed, Data Scape chose not to proffer any perceived factual disputes in its

23   opposition brief or at oral argument.  *See, e.g.,* Dkt. 35 at 1 ("Data Scape [has not]

24   pointed to any factual dispute preventing a decision on the pleadings.").

25   Further, Data Scape's seventh category is simply a regurgitation of its argument

26   regarding a representative claim across different patents (Mot. at 12-13), something

27   this Court has considered and rejected.  Dkt. 41 at 7 ("[T]he Court finds that Data

28   Scape has not raised any meaningful argument for why claim 19 of the 929 Patent is

23   Case No. 8:18-cv-02285-DOC-KES

OPPOSITION OF WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL TECHNOLOGIES, INC. TO MOTION TO ALTER AND FOR LEAVE TO AMEND

JMBM | Jeffer Mangels Butler & Mitchell LLP

1  not representative of the Morohashi Patents, and the Court will treat claim 19 of the

2  929 Patent as representative of the Morohashi Patents." and "the Court finds that

3  Plaintiff has not raised a meaningful argument as to any claim of the 893 Patent, and

4  as such, the Court will treat claim 19 of the 929 as representative of the 893 Patent.").

5      Accordingly, Data Scape's remaining categories of allegations do nothing to

6  disturb this Court's § 101 Judgment, and thus, amendment would be futile.

7  **C.   The Court Should Deny Leave to Amend Due to Data Scape's Undue**

8  **Delay, Bad Faith, Dilatory Motive and Prejudice to Defendants**

9      Data Scape also engaged in bad faith, unduly delayed seeking leave, and had a

10  dilatory motive.  Western Digital expressly asked Data Scape if it intended to amend

11  its complaint and Data Scape made the strategic decision not to amend it even though

12  it had amended its complaints in three related cases in response to similar motions to

13  dismiss for lack of patentable subject matter.  Mellema Decl., ¶ 2.  Data Scape

14  provided no explanation for its disparate treatment involving the same patents and the

15  same motions or its dilatory motive for waiting to amend its complaint.  The only

16  reasonable inference is that Data Scape was either judge shopping by trying to have

17  this issue decided by a particular judge and/or that it was running up Western Digital's

18  litigation costs by forcing it to endure multiple rounds of motions to dismiss as it now

19  suggests should occur in its motion.  Either explanation warrants denial of its motion.

20      Western Digital also would suffer undue prejudice because of the time and cost

21  incurred in briefing and arguing another motion to dismiss when Data Scape could

22  have, and should have, amended its complaint in the manner it now argues is needed

23  to address Western Digital's motion to dismiss.  But Data Scape knew weeks prior to

24  filing its motion that any such amendments would be futile.  Counsel for Data Scape

25  and Western Digital had only a single conversation about Data Scape's contemplated

26  motion.  Mellema Decl., ¶ 4.  During that conversation, and in follow-up emails,

27  Western Digital asked for the specific amendments Data Scape intended to make

28  because Western Digital did not believe that any amendments would disturb the

Court's § 101 Judgment.  *Id.*, ¶ 4-5, Exh. B.  Data Scape *refused* to provide the requested information, and thus, refused to meet and confer with Western Digital under the Local Rules.  *Id.*  Belatedly, the day Data Scape filed its motion, it also provided its proposed FAC showing the amendments.  *Id.*, ¶ 6.  Of course, by that time, it was too late to meet and confer to attempt to narrow the issues, which is what Data Scape intended.  *Id.*  Data Scape did all of this with eyes wide open.

In sum, Data Scape should not be permitted to amend its complaint in an attempt to create another opportunity to re-litigate the eligibility of its patents after having had the opportunity to amend and raise the arguments it now belatedly raises in its motion, and after being told that any such amendments would be unavailing. Indeed, such litigation tactics justify an award of Western Digital's fees in having to oppose Data Scape's ill-conceived and unsupported motion.

## V.   **CONCLUSION**

For these reasons, Western Digital respectfully requests that the Court deny Data Scape's motion to alter the judgment and for leave to amend.  Western Digital also requests an award of fees as sanctions according to proof that will be provided upon the Court's request.

DATED:  June 17, 2019       JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON
GREGORY S. CORDREY
JOSEPH J. MELLEMA


By:   _____/s/ *Gregory S. Cordrey*_____
          GREGORY S. CORDREY
     Attorneys for Defendants WESTERN
     DIGITAL CORPORATION and WESTERN
     DIGITAL TECHNOLOGIES, INC.